```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
MAGGALEAN MOSBY,

               Plaintiff,

-against-

The CITY OF NEW YORK, POLICE OFFICER JOSEPH ALIBERTI, POLICE OFFICER LUIGI TIRRO, and POLICE OFFICER JOHN DOE in their individual and official capacities,

               Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/7/2022
```

20 Civ. 1485 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Maggalean Mosby, brings claims against the City of New York (the "City"), Police Officers Joseph Aliberti, Luigi Tirro, and John Doe[1] (the "Individual Defendants," and the City, together with the Individual Defendants, "Defendants"), for denial of a fair trial, excessive use of force, false arrest, and failure to intervene pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1.

Before the Court is Defendants' motion for summary judgment. Defs. Mot., ECF No. 34. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

On October 4, 2018, Plaintiff and her friend, Geraldine Jeanty, went to TGI Friday's at 47 Broadway in lower Manhattan. Defs. 56.1 ¶ 3, ECF No. 36. They were seated in an elevated section of the restaurant, when a male customer got into a physical fight with an employee of TGI Friday's after the customer refused to pay his bill. *Id.* ¶¶ 4–5. The restaurant staff called the police, and Officers Joseph Aliberti and Anthony Sclafani responded, and were joined about

---

[1] The pleadings were not revised to name the John Doe.
[2] The following facts are drawn from the parties' Rule 56.1 statements of undisputed fact and the response thereto. Facts in dispute are so noted. Citations to a paragraph in Defendants' Rule 56.1 Statement also include Plaintiff's response, and vice versa.

a minute later by Officer Luigi Tirro. *Id.* ¶¶ 6, 8–10. Aliberti and Sclafani handcuffed the male customer. *Id.* ¶ 11. At some point, Jeanty left the elevated part of the restaurant and went to the lower level. *Id.* ¶ 13. She proceeded to yell at the handcuffed man. *Id.* Plaintiff also left her seat to see what was happening, and saw two officers standing around Jeanty. *Id.* ¶¶ 15–16. Sclafani directed Jeanty to "back up," and when she did not immediately comply, there was a physical altercation between them. *Id.* ¶¶ 17–18.

The parties disagree on the ensuing interaction between Plaintiff and Tirro. *Id.* ¶¶ 21–23, 25–26. Plaintiff contends that she was standing next to Tirro. *Id.* ¶¶ 20–23 (response). She claims that she never put her hands on any officer and was not aggressive. *Id.* ¶¶ 21–22 (response); Pl. 56.1 ¶¶ 6–7. Plaintiff claims that Tirro threw her to the floor with no warning. Def. 56.1 ¶¶ 21, 23 (response). By contrast, Defendants allege that Plaintiff grabbed Tirro's arm as he was assisting Sclafani arrest Jeanty, and that her body was "up against" Tirro's back. Def. 56.1 ¶¶ 21–23. They contend that Tirro "swung" his arms back and "threw [P]laintiff off his arm," causing Plaintiff to fall to the ground. *Id.* ¶¶ 25, 27.

The parties agree that during the same time period, Aliberti stepped away from the handcuffed male and moved toward where Plaintiff and Tirro were located. *Id.* ¶¶ 24, 26. They also agree that Plaintiff ended up on the floor and was handcuffed. *Id.* ¶¶ 27–28. And, they further agree that Aliberti did not kick, punch, or stomp her. *Id.* ¶¶ 30–31. Finally, the parties agree that as a result of the incident, Plaintiff suffered a cut on her arm, bruising on her arms and legs, and discoloration on her wrists. *Id.* ¶¶ 32–33.

Plaintiff was transported to the First Precinct, and Aliberti completed the arrest paperwork. *Id.* ¶¶ 37–38. On October 5, 2018, he spoke with an assistant district attorney about the incident. *Id.* ¶ 39. The assistant district attorney prepared a complaint, which Aliberti

signed. *Id.* ¶ 42. Tirro did not submit any paperwork related to Plaintiff's arrest, nor does he believe he spoke with an assistant district attorney about the incident. *Id.* ¶¶ 40–41. On October 5, 2018, Plaintiff was arraigned and charged with harassment in the second degree, obstructing governmental administration in the second degree, and resisting arrest, and was released on her own recognizance. *Id.* ¶ 43. On November 13, 2018, she returned to court and accepted an adjournment in contemplation of dismissal (an "ACD"). *Id.* ¶¶ 45–46. This was her only post-arraignment court appearance. *Id.* ¶ 47.

Defendants move for summary judgment. Defs. Mot. Plaintiff consents to the dismissal of her claims against the City, her failure to intervene claim against Aliberti relating to Tirro's alleged excessive force, and against Tirro for Aliberti's arrest of Plaintiff. Pl. Opp'n at 1, 18, ECF No. 40.[3] Accordingly, Defendants' motion for summary judgment on those claims is GRANTED, and they are DISMISSED. For the reasons stated below, the remainder of the motion for summary judgment is GRANTED in part and DENIED in part.

## DISCUSSION

I. Legal Standards

    A. Summary Judgment

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[3] Defendants also contend that Plaintiff abandoned her claim of excessive force related to tight handcuffing, Defs. Reply at 3, ECF No. 43, however, the Court discerns no such claim based on the facts alleged in the complaint, *see generally* Compl. Therefore, there was no claim to be abandoned.

242, 248 (1986).  Material facts are those which, under governing law, may affect the outcome of a case.  *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(a), (c); *Celotex,* 477 U.S. at 322–25; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002).  The movant may satisfy its burden by "showing that the materials cited do not establish the . . . presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(B).  If the nonmoving party has the burden of proof on specific issues, the movant may also satisfy its initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex,* 477 U.S. at 322–23; *PepsiCo Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002).  In deciding the motion, the court views the record in the light most favorable to the nonmoving party.  *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002).

If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine dispute of fact.  *Beard v. Banks,* 548 U.S. 521, 529 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001).  The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by facts.  *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002).  Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial."  *Celotex,* 477 U.S. at 324 (quotation marks omitted).

    B.  Qualified Immunity

"The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019) (quotation marks omitted).  To prevail on a constitutional claim for money damages, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (quotation marks and citations omitted).  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  The rule must be "settled law," meaning that it "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 589–90 (quotation marks and citation omitted).  "In making this determination, [a court must] consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016).

To be entitled to qualified immunity at the summary judgment stage of a case, a defendant must show that, even viewing the evidence in the light most favorable to the plaintiff, the defendant's actions did not violate clearly established law.  *Husain v. Springer*, 494 F.3d 108, 131 (2d Cir. 2007).

II.     False Arrest[4]

Plaintiff alleges that she was falsely arrested in violation of her rights under the Fourth Amendment to the Constitution.  "To establish the requisite elements of a false arrest, a plaintiff must show that: (1) the defendants intended to confine her; (2) she was conscious of her confinement; (3) she did not consent to be confined; and (4) the confinement was not otherwise

---

[4] Defendants in a footnote argue that Tirro was not directly involved in Plaintiff's arrest.  Defs. Mem. at 6 n.1, ECF No. 37.  The Court agrees that Tirro was not involved in Plaintiff's arrest.  *See* Defs. 56.1 ¶¶ 26–29, 38.  Plaintiff does not mention Tirro in relation to her false arrest claim.  *See generally* Pl. Opp'n.  Accordingly, that claim is abandoned, *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021), and Defendants' motion for summary judgment as to the false arrest claim against Tirro is GRANTED.

5

privileged." *Pace v. Town of Southampton*, 678 F. Supp. 2d 79, 84 (E.D.N.Y. 2010) (citations omitted). The fourth element cannot be established where the arrest is based on probable cause. *Id.*; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause . . . is a complete defense to an action for false arrest." (quotation marks and citation omitted)).

Only the fourth element is in dispute. Thus, "[t]he Court's task, at this stage, is to determine if there are triable issues of fact concerning whether [Aliberti] lacked probable cause to arrest [Plaintiff]." *Pace*, 678 F. Supp. 2d at 85; *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ("[W]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury.").

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. Defendants argue that Aliberti had probable cause to arrest Plaintiff under N.Y. Penal Law §§ 195.05, 240.26(1), and 205.30 for obstructing governmental administration in the second degree; harassment in the second degree; and resisting arrest, respectfully. Defs. Mem. at 6–10. Probable cause need only exist under one of the statutes to create a defense to the false arrest claim. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."). The Court shall address each in turn.

A.  Obstructing Governmental Administration

Defendants argue that there was probable cause to arrest Plaintiff for obstructing governmental administration in violation of N.Y. Penal Law § 195.05.  Defs. Mem. at 6–9.  The elements of this crime are that: "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of the official function by interfering with it; and (3) the individual does so intentionally."  *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017).  The interference must be through one of three methods: "(1) intimidation, (2) physical force or interference, or (3) any independently unlawful act."  *Uzoukwu v. City of New York*, 805 F.3d 409, 414 (2d Cir. 2015) (quoting *People v. Case*, 365 N.E.2d 872 (N.Y. 1977) (other quotation marks omitted)).

Defendants argue that Plaintiff "attempted to interfere [with the arrest of Jeanty] by standing next to, at the back of [Tirro], almost under his arm" and then hooked her arm into Tirro's.  Defs. Mem. at 8.  Defendants cite cases where probable cause was found when the plaintiff approached officers during an arrest, *Husbands ex rel. Forde v. City of New York*, No. 05 Civ. 9252, 2007 WL 2454106 at *13 (S.D.N.Y. Aug. 16, 2007), and where the plaintiff refused to move, and instead approached the person being arrested, after being warned by officers, *Petway v. City of New York*, No. 12 Civ. 279, 2014 WL 839931 at *5 (E.D.N.Y. Mar. 4, 2014).  Defs. Mem. at 8–9.  Here, there is a material dispute of fact as to whether Plaintiff approached Tirro or attempted to interfere with the arrest of Jeanty.  *See* Defs. 56.1 ¶¶ 21–23.  Because there are triable issues of fact, the Court cannot determine whether there was probable cause for arrest under § 195.05.

B.  Harassment

Under New York law, harassment in the second degree occurs when, "with intent to

7

harass, annoy or alarm another person . . . [a person] strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . ." N. Y. Penal Law § 240.26(1).  There is a "physical contact element" to harassment.  *People v. Canjura*, 2 N.Y.S.3d 724, 727 (N.Y. App. Div. 2014).  Defendants contend that the body camera video "is dispositive" and state that "[a]t the very least, it depicts [P]lantiff attempting to subject Officer Tirro to physical contact."  Defs. Mem. at 9.  The Court, having reviewed the footage, does not agree.  It is unclear if there was any contact or attempted contact between Plaintiff and Tirro prior to his contact with her.  Therefore, the Court cannot find as a matter of law that there was probable cause to arrest her for harassment in the second degree.

    C. Resisting Arrest

Under N.Y. Penal Law § 205.30, "[a] person is guilty of resisting arrest when [s]he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of [her]self or another person." N.Y. Penal § 205.30.  Defendants claim that there was probable cause for Aliberti to arrest Plaintiff because Plaintiff was attempting to prevent the arrest of Jeanty.  Defs. Mem. at 10.  As stated above, it is unclear what occurred between Plaintiff and Tirro.  There is a material issue of fact regarding whether Plaintiff was attempting to prevent Tirro from assisting in the arrest of Jeanty.  Therefore, the Court cannot determine that there was probable cause to arrest Plaintiff for resisting arrest.

    D. Qualified immunity

"An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quotation marks and citation omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or

(b) officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski v City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (citation omitted).

As discussed above, there is a material dispute of fact regarding the interaction between Plaintiff and Tirro which precludes a finding on summary judgment that there was probable cause for Plaintiff's arrest. This same factual dispute precludes the Court from finding that there was arguable probable cause, and therefore, that Aliberti is entitled to qualified immunity as a matter of law. *See Kayo v. Mertz*, 531 F. Supp. 3d 774, 795 (S.D.N.Y. 2021). Viewing the disputed facts in the light most favorable to Plaintiff, a jury could conclude that a reasonably competent officer would not have found probable cause to arrest her on any of the grounds articulated by Defendants, making her arrest a violation of a clearly established constitutional right. Because the "record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense," the Court denies Defendants' motion to dismiss the false arrest claim on the ground that Aliberti is entitled to qualified immunity. *Id.* (quoting *Hurlman v. Rice*, 927 F.2d 74, 82 (2d Cir. 1991)).

III. Excessive Force

The Supreme Court has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). "Determining whether the force used during an arrest is 'reasonable' requires balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995) (quoting *Graham*, 490 U.S. at 396). "The question is whether the officers' actions are objectively

reasonable in light of the facts and circumstances confronting them." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (quotation marks and citation omitted).

Defendants contend that Tirro's use of force against Plaintiff was reasonable and proportional. Defs. Mem. at 12–13. They argue that Tirro used only the force required to "get [P]lantiff out of his way." *Id.* at 13. Further, they contend that Plaintiff's injuries were *de minimis*, and, that such injuries are insufficient to make out a constitutional claim. *Id.* at 11, 13. In the alternative, they argue that Tirro is entitled to qualified immunity because "reasonable officers could disagree on the legality of [] Tirro's conduct under the[] circumstances." *Id.* at 13. Plaintiff argues that her injuries were sufficient to survive a motion for summary judgment, and that there is a material issue of fact as to what occurred, preventing the Court from resolving this claim at this stage. Pl. Opp'n at 9–12.

The Second Circuit has held that "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *See Robinson v. Via*, 821 F.2d 913, 924 (2d Cir. 1987); *see also Jones v. Treubig*, 963 F.3d 214, 239 (2d Cir. 2020). Injuries similar to those alleged to have been suffered by Plaintiff have been found sufficient to support a claim for excessive force. *See Robinson*, 821 F.2d at 924. Furthermore, viewing the facts in the light most favorable to Plaintiff, the force used by Tirro was excessive if Plaintiff was merely standing near him as he approached a fellow officer to aid in the arrest of Jeanty. Because there is a material dispute of fact regarding the facts and circumstances surrounding the use of force, summary judgment is inappropriate. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

Defendants rely on *Calixto v. City of New York*, 778 F. App'x 59 (2d Cir. 2019), and *Lennon v. Miller*, 66 F.3d 416, to argue that Tirro is entitled to qualified immunity. Defs. Mem.

at 13; Defs. Reply at 5. But, *Calixto* is inapposite. In that case, the plaintiff was blocking the officer's pursuit of suspects and had a stick raised to eye level. *Calixto*, 778 F. App'x at 60. By comparison, taking the facts in the light most favorable to the nonmoving party, Plaintiff was an unarmed bystander who was merely standing next to Tirro as he was approaching a fellow officer who was effectuating an arrest. Pl. Opp'n at 3, 9, 11. Tirro then threw Plaintiff to the floor without warning, yelling for her to "back up" when she was already in the air. *Id.* If these facts are found to be true by a jury, Tirro would not be entitled to qualified immunity. *See Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (finding allegations, if true, that nonviolent individuals were thrown to the ground would preclude qualified immunity); *see also Piper v. City of Elmira*, 12 F. Supp. 3d 577, 594–95 (W.D.N.Y. 2014) (finding qualified immunity was precluded when an officer threw an unarmed woman to the floor).

The issues of material fact must be resolved by a jury before the Court can decide the question of qualified immunity. *Husain*, 494 F.3d at 133. *Lennon* is not to the contrary; rather, it states that "[i]f there is no dispute about material facts, the district court should assess the reasonableness of the defendant['s] conduct under the circumstances presented in order to determine on summary judgment whether the defendants are entitled to qualified immunity." 66 F.3d at 423. Accordingly, because there is a dispute about material facts, the Court cannot rule on the issue of qualified immunity at this juncture.

IV. <u>Fabrication of Evidence</u>

Plaintiff claims that Aliberti violated her due process rights by filing the arrest report, conveying false information to the assistant district attorney, and signing the criminal complaint containing false information. Pl. Opp'n at 4–5, 13. She alleges that Aliberti's representation that she jumped on Tirro's back to interfere with the arrest of Jeanty was a fabrication, and that it led

11

to her prosecution. *Id*. at 4–5.  Plaintiff also claims that Tirro is liable for failing to intervene to prevent the constitutional violation.  Pl. Opp'n at 5, 18.  Defendants move for summary judgment on these claims, arguing that Plaintiff has failed to show: (1) that there was a falsification of the evidence, (2) that the allegedly falsified evidence would be material to a jury's verdict, and (3) that her liberty was sufficiently deprived for a falsification of evidence claim.  Defs. Mem. at 16–21. They also argue that the claim against Tirro fails because he did not submit any paperwork related to the prosecution and did not know what was in the paperwork submitted.  *Id.* at 22.  The Court shall address the claims against both defendants in turn.[5]

    A.  Claim Against Aliberti[6]

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  To succeed on a claim that fabrication of evidence resulted in the denial of the right to a fair trial, a plaintiff must show that "an (1) investigating official (2) fabricate[d] information (3) that [was] likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors,

---

[5] Defendants do not assert qualified immunity for the falsification of evidence claim.  *See* Defs. Mem. at 15–23. Even if they did, it would fail.  The Second Circuit has held that it is clearly established that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." *Ricciuti*, 124 F.3d at 130; *see also Garnett*, 838 F.3d at 276 ("[F]abrication of evidence violate[s] a clearly established constitutional right" (quotation marks and citation omitted)).  Accordingly, Aliberti is not entitled to qualified immunity on this claim, because if a jury accepts Plaintiff's version of the facts, Aliberti's intentional conduct violated long-established law in this Circuit.  Further, Defendants, having raised qualified immunity as to other claims but not as to this claim have waived a qualified immunity argument for this claim.  *See McCardle v. Haddad*, 131 F.3d 43, 51–52 (2d Cir. 1997).
[6] Plaintiff invites the Court to grant her summary judgment on this claim, citing to *Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 49 (2d Cir. 2020) (per curiam).  Pl. Opp'n at 13.  The Court declines to do so because there are material issues of fact a jury must resolve.

and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted).

When a plaintiff claims that the fabrication of evidence led to "separate harms beyond the deprivation of" liberty caused by an arrest, she can prevail even if her arrest was supported by probable cause. *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017); *see also Garnett*, 838 F.3d at 278. This can include a showing that the fabrication of evidence led to a plaintiff being held longer than she otherwise would have been or that the plaintive might have been released without agreeing to an ACD, absent the allegedly fabricated evidence. *See Ross v. City of New York*, No. 17 Civ 3505, 2019 WL 4805147, at *9 (E.D.N.Y. Sept. 30, 2019). Where a plaintiff alleges harms beyond the arrest, the question is whether the fabrication of evidence was the proximate cause of the deprivation. *See, e.g.*, *Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016).

Aliberti is not entitled to summary judgment on Plaintiff's claim that the fabricated evidence caused additional deprivations of liberty in connection with her prosecution. First, Aliberti does not contest that he was an investigative official. *See generally* Defs. Mem.; *see also* ECF No. 38-4 at 4 (listing Aliberti as the investigating officer). Second, as discussed above, a jury could find that Aliberti lacked probable cause to arrest Plaintiff on any of the charges. And, they could further find that Aliberti falsely recounted the incident in the police report, to the assistant district attorney, and in the criminal court complaint he signed. Defendants do not argue that the assistant district attorney did not rely on Aliberti's statements in bringing the charges, in fact, they point out that Aliberti was the officer who submitted paperwork in connection with the prosecution and spoke to the assistant district attorney. Defs. 56.1 ¶¶ 40–41; Defs. Mem. at 16; Aliberti Depo. at 50–52, ECF No. 35-5. Rather, they argue that the body

camera video corroborates Aliberti's statements that resulted in Plaintiff's prosecution, and that this video evidence means that Aliberti's statements would not have influenced a jury.  Defs. Mem. at 18–19.  The Court, having reviewed the videos multiple times, at various speeds, and also having reviewed the still images, concludes that there is a material dispute of fact regarding whether a jury in a criminal prosecution against Plaintiff would likely have been influenced by Aliberti's narrative of what occurred given the grainy video, poor lighting, and angle.  A jury in this civil case may determine that Aliberti's statements would have influenced a criminal jury's verdict had it progressed to that point.

Further, Plaintiff has produced evidence of harms she suffered beyond her initial arrest in connection with being criminally prosecuted.  She was searched, held at the precinct overnight, arraigned, and made to appear at court again.  Defs. 56.1 ¶¶ 43, 45–46; Aliberti Depo. at 49–52; Pl. Depo. at 32, ECF No. 35-3; ECF No. 38-6 (noting she was in custody for twenty-two hours and twenty-one minutes).  And, she lost a total of twenty-four hours of work over a number of days.  Pl. Depo. at 20.  The Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty."  *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (quotation marks, citations, and alterations omitted).  That deprivation is also a cognizable harm for purposes of a fabrication of evidence claim.  *See, e.g.*, *Quiller v. Nunez*, No. 16 Civ. 3202, 2020 WL 4475267, at *10 (S.D.N.Y. Aug. 3, 2020); *Snead v. City of New York*, No. 16 Civ. 9528, 2020 WL 2765844, at *5 (S.D.N.Y. May 28, 2020); *Egan v. New York City*, No. 16 Civ. 1479, 2018 WL 4926445, at *18 (S.D.N.Y. Oct. 10, 2018).

### B. Claim Against Tirro

An officer is liable for failing to intervene to prevent a constitutional violation if "that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official," and the officer had "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Defendants contend that Tirro did not have an opportunity to intervene because he did not submit any paperwork related to the prosecution, nor does he recall speaking with the assistant district attorney about Plaintiff's arrest. Defs. Mem. at 22–23. Further, they argue that Tirro did not know what was alleged in the criminal complaint. *Id.* Plaintiff contends that Tirro had reason to know of the constitutional violation because he input the arrest report into the computer. Pl. Opp'n at 18. Plaintiff argues that by entering the arrest report into the computer Tirro "clearly knew of Mosby's impending prosecution on the basis of the claim that Mosby jumped on his back." *Id.* The arrest report Tirro entered makes no mention of the facts undergirding the charges. ECF No. 38-5. At his deposition, Tirro testified that he spoke with Aliberti about the incident and understood that Plaintiff would be charged with obstructing governmental administration as a result of "what she did, while I was trying to help Officer Sclafani." ECF No. 35-7 at 34–35. However, this is not sufficient to raise an issue of fact that Tirro actually knew what was in the complaint and had the opportunity to intervene. *See Bobbit v. Marzan*, No. 16 Civ. 2042, 2020 WL 5633000, at *6–8. (S.D.N.Y. Sept. 21, 2020). Tirro is entitled to summary judgment on the claim that he failed to intervene in Aliberti's alleged fabrication of evidence.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED for the claims against the City, for the false arrest claim against Tirro, and the failure to intervene claims against Aliberti and Tirro, and otherwise DENIED. Trial in this case is set for **January 16, 2023**.

The Clerk of Court is directed to terminate the motion at ECF No. 34.

SO ORDERED.

Dated:  September 7, 2022
　　　　New York, New York

_____
ANALISA TORRES
United States District Judge